Harold H. Hymes, J.
In September, 1965, the plaintiff brought his Studebaker automobile to the defendant Phil Talerico’s Texaco Service Station for repairs. Talerico removed the engine and brought it to defendant Utica Gear and Auto Parts Corp., where it was repaired and new parts were installed, including new bearings on the crank shaft.
*500 Talerico then installed the repaired engine in the plaintiff’s automobile. Thé engine still' did not operate properly, and he so informed the plaintiff when he returned for his automobile. Utica Gear made additional repairs at the service station. Again, the engine did not run properly. The plaintiff came to the defendant’s station for his automobile. With him was a salesman from the Koerner Ford Company, an automobile sales agency. The plaintiff had signed a contract to purchase a new automobile and part of the ■ purchase price was to be paid for by the trade-in of the Studebaker automobile then being repaired by the defendants. Talerico states that he advised the plaintiff not to take the automobile because it still had not been repaired properly and further, that if he did take it, Talerico disclaimed all responsibility. The plaintiff denies such warning by the defendant.
Plaintiff paid the defendant Talerico and took the automobile. He drove it one-half mile when it stalled and could not be started again. Talerico was called and he towed the automobile back to his station. He examined the engine and loosened some “caps” so that the engine could move. Then at the plaintiff’s request, defendant Talerico towed the plaintiff’s car to a point near the Koerner Ford establishment from which point the plaintiff then drove his automobile under its own power into, Koerner Ford. Upon examination of the plaintiff’s car, Koerner Ford refused to accept it as a trade-in. The plaintiff then drove his automobile three quarters of a mile to his own home. The next day he drove the car an additional five miles, until it stalled once more and could not be operated any farther. The car was towed to another garage where it underwent a general overhaul because of the considerable damage to the motor.
The mechanic from this latter garage' testified that the bearings on the crank shaft had been installed improperly so that the oil could not flow through to lubricate the parts. It was the operation of. the automobile without sufficient lubrication that caused the damage to the engine. He stated that the engine would “freeze” when there was no oil present and that the distance it could travel would depend upon the amount of oil in the engine.
The plaintiff is suing for this repair bill of $381.33 and for the rental he" claims to have paid for the use of another car while his automobile was being repaired.
•There is no denial on" the ■ part of the defendants that the repair work subcontracted by the defendant Talerico to Utica Gear, was done improperly. The question presented here, *501 however, is whether or not the plaintiff, by his own actions, contributed to the subsequent serious damage to the automobile, and so is barred from collecting damages for negligent performance of the contract for repairs.
Whether or not Talerico warned the plaintiff that his automobile was not in condition to be driven, the plaintiff should have known through his own observation that there was something seriously wrong with his car when it stalled after he had driven it a half mile from the garage. There is also some evidence that the motor was knocking. Yet, after this obvious malfunction, he insisted that the car be towed to Koerner Ford, and he then drove the car into the sales agency himself. Undoubtedly, his sole purpose in having the car towed to Koerner Ford was to use it for trade-in purposes on a new car. He never anticipated that it would be rejected. U was this refusal to accept the automobile as a trade-in on a new car that placed the plaintiff in a dilemma. Thereafter, his continued driving of the car to his home, and then an additional five miles the next day, aggravated the damage already done to his automobile.
In the case of Hellman v. Hoffman Motor Car Co. (9 Misc 2d 418, affd. 5 A D 2d 856) the defendant garageman drained anti-freeze out of the radiator and replaced it with water, but neglected to properly close the petcocks, so that the water drained out of the radiator. The plaintiff drove the car several miles during the next week and even had additional water put into the radiator. She noticed that the car was ‘ ‘ proceeding with great difficulty” (p. 418), and yet she continued to drive it an additional three and one-half miles. This caused serious damage to her car. In that case the court said (p. 419): “ On both the issues in the case, negligence and contributory negligence, we find that the proof preponderates in favor of the defendant. Plaintiff admits that she was capable of reading the instrument panel on the dashboard. Yet when she was aware that there was difficulty with the motor, she did not once look at the thermometer, which Avould have revealed the overheated condition of the motor, but continued to drive the car. . This is hardly the care a reasonable, prudent person would employ. ’ ’
While it is true that the defendants in the case at bar may not have repaired the' automobile properly in the first place, nevertheless they should have been given the opportunity to rectify- their mistake. It was the plaintiff’s impatience that prevented this. Furthermore, his continued, operation of the *502 car made him guilty of contributory negligence. He should not be allowed to recover for his own negligence and erpor in judgment.
Accordingly, judgment dismissing the complaint is granted to the defendants.